UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN HERTIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01511-JRO-MKK |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Plaintiff Dr. John Hertig filed this lawsuit under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, contending that Defendant Butler University terminated his professorship because of his disability rather than the pretextual rationale the school articulated in its termination letter. He also alleges that his termination constitutes ADA retaliation—for protected activity related to his disclosure of his disability to the school—and a breach of his employment contract.

Butler University now moves to dismiss under Rule 12(b)(6), dkt. [12], arguing that Hertig failed to plead both a legally cognizable "disability" and the causation sufficient to support his federal claims. The Court **GRANTS** the motion with leave to amend. While Hertig has plausibly alleged a disability, he has failed to plausibly allege that Butler University's termination of his employment was connected to his disability or constituted retaliation for protected activity related to that disability. Without federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court takes all well-pled allegations as true and draws reasonable inferences in the nonmoving party's favor. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

### A.    The Parties

Butler University, a private university in Indianapolis, Indiana, hired Dr. John Hertig as a full-time Associate Professor of Pharmacy Practice on October 1, 2018. Dkt. 1 ¶¶ 3, 10. He was granted tenure in June of 2024. *Id.* ¶ 10. On October 10, 2024, Hertig and the Dean of the Department of Pharmacy Practice executed his Faculty Appointment Agreement. Dkt. 1-1 at 2. During his employment, Hertig served as both Vice-Chair and Chair of the Department of Pharmacy Practice. Dkt. 1 ¶ 11.

### B.    Disability

In late 2023, Hertig was diagnosed with Generalized Anxiety Disorder. *Id.* ¶ 13. On or around December 3, 2023, he "was hospitalized while attending a national conference after he passed out due to exhaustion and other anxiety-related symptoms." *Id.* On December 11, 2023, Hertig began a brief leave of absence (he does not allege how long), after disclosing his diagnosis to Butler University. *Id.* ¶ 15. Shortly thereafter, he "began attending therapy sessions and regularly taking anti-anxiety medication." *Id.* ¶ 14. In February 2024, Hertig "informed the University of his intention to voluntarily step down as Chair of the Department of Pharmacy Practice." *Id.* ¶ 16.

**C.     Termination**

On December 18, 2024—twelve months after disclosing his diagnosis to Butler University, ten months after stepping down as Chair, just over five months after making tenure as an Associate Professor, and approximately two months after executing his Faculty Appointment Agreement—Hertig heard from Butler University's Accounts Payable Department regarding reimbursement discrepancies for airline flights Hertig had booked with Delta Airlines.  *Id.* ¶ 17.  Butler University requested a 24-month report of Hertig's travel with Delta.  *Id.*

The parties dispute the details of Hertig's reimbursements.  *See id.* ¶¶ 18–25.  Ultimately, Butler University terminated Hertig's employment on or around February 17, 2025,[1] citing "discrepancies in travel reimbursements as the basis for his termination," and accusing Hertig of "'depriving the University of its funds,' by receiving reimbursements for cancelled flights to his personal credit card."  *Id.* ¶ 26.  Hertig alleges that Butler "University never identified a specific

---

[1] The complaint alleges Hertig's termination occurred on February 17, 2024.  Dkt. 1 ¶¶ 26, 59.  This date does not appear to have been written in error in at least one instance because Hertig alleges his termination occurred "prior to the start of his tenured appointment [on June 1, 2024] and without any pre-termination hearing . . . ."  *Id.* ¶ 59.  But the rest of the complaint reads as if the termination occurred in 2025, after he made tenure on June 1, 2024, dkt. ¶ 10, executed the Faculty Appointment Agreement, dkt. 1-1, and responded to the Accounts Payable travel reimbursement inquiry, dkt. 1 ¶¶ 17–18.  And the termination letter attached to Butler University's brief, which Hertig concedes the Court may consider as "an incorporated document," dkt. 19 at 5, is dated February 18, 2025, dkt. 13-1.  Hertig also appears to concede a February 17, 2025, termination by referencing the "February 25 termination" in his response brief, and he never disputes Butler University's more coherent reading of the complaint that termination occurred in 2025 and not 2024.  *See* Dkt. 19 at 7.  Accordingly, the Court reads the complaint to allege a termination date of February 17, 2025, and attributes the February 17, 2024, references to inadvertent drafting error.  If the Court has misunderstood the meaning of Hertig's complaint, he will have an opportunity to allege a more coherent narrative in his amended complaint.

amount allegedly misappropriated by Dr. Hertig, and after his termination, it withheld over $1,000 from an unrelated, undisputed reimbursement, claiming that it was entitled to do so under the circumstances." *Id.* ¶ 31.

The University's termination letter also referenced "an incident in which Hertig informed his Department Chair . . . that he would be giving a presentation at a conference in Washington, D.C.," but actually "delivered the presentation virtually from Kansas City." *Id.* ¶ 27. The University claimed that Hertig's statement to the Department Chair conveyed "false information related to [his] job responsibilities." *Id.* ¶ 28.

On July 29, 2025, Hertig filed this lawsuit. Dkt. 1. Count I alleges disability discrimination under the ADA, 42 U.S.C. §§ 12111–213. *Id.* ¶¶ 35–41. Count II alleges retaliation under the ADA, 42 U.S.C. § 12203(a). *Id.* ¶¶ 42–48. Count III alleges disability discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *Id.* ¶¶ 49–55. And Count IV alleges breach of contract, specifically breach of the October 10, 2024, Faculty Appointment Agreement. *Id.* ¶¶ 56–62 (citing Dkt. 1-1).

## II. LEGAL STANDARD

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff may defeat a motion to dismiss filed pursuant to Rule 12(b)(6) if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary-judgment stage," *Graham v. Bd. of Educ.,* 8 F.4th 625, 627 (7th Cir. 2021).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Twombly,* 550 U.S. at 555.  In deciding a motion to dismiss under Rule 12(b)(6), the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim."  *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

## III. DISCUSSION

### A.    Discrimination Claims

In relevant part, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . ."  42 U.S.C. § 12112(a).  "To prove a violation of § 12112(a), a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago,* 817 F.3d 561, 565 (7th Cir. 2016).  The standards for

5

proving a discrimination claim under the ADA and Rehabilitation Act are largely the same. *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 678 n.2 (7th Cir. 2010).

Butler University argues that Hertig has failed to allege the first and third prongs of this test: disability and causation. The Court disagrees on the former but agrees on the latter. Hertig has plausibly alleged an episodic mental health condition that substantially limits a major life activity when it is not managed by therapy and medication. That is enough to allege a disability at this stage of the case. However, Hertig does not plausibly allege that his disability caused the adverse action he seeks to redress in this complaint. Too much time passed between the disclosure of his disability to Butler University and his termination, and during that time Butler University promoted him, severing any connection his disability may have had with Butler University's decision to terminate his employment.

### 1.    Substantial Impairment of Major Life Activity

Butler University argues that Hertig failed to allege a cognizable "disability" under the ADA and Rehabilitation Act because the complaint omits any plausible allegation of a substantial impairment to a "major life activity." Dkt. 13 at 8–12. Hertig disagrees, arguing that he has plausibly alleged an "episodic condition" that is "substantially limiting when active." Dkt. 19 at 4. Construing the complaint in a light most favorable to Hertig, the Court agrees with Hertig.

A legally cognizable "disability" under the ADA and Rehabilitation Act is defined by statute, so we start with the text. A "disability" is "(A) a physical or

mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  42 U.S.C. § 12102.  In other words, physical or mental impairments that do not "substantially limit[] one or more major life activities" do not constitute a "disability" supporting a claim under the ADA and Rehabilitation Act.  Even substantial limitations do not qualify as a disability if they do not impact "life activities."  *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012) (no ADA claim where plaintiff argued only that his condition limited his "ability to function and live").  The statute also provides a non-exhaustive list of examples of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A); *accord Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (summarizing "major life activities" as "walking, standing, bending, and caring for oneself").

The ADA also includes several rules of construction for the definition of "disability."  The relevant rules for this case are the following:

> (A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.
>
> . . . .
>
> (D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

> (E)(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures . . . .

42 U.S.C. § 12102(4)(A)–(E).  These rules of construction were part of the ADA Amendments Act of 2008 ("ADAAA").  Pub. L. No. 110-325, § 4, 122 Stat. 3553, 3555–56 (2008). The ADAAA "relaxed court-imposed rules as to how severe an impairment must be to be considered a disability." *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 888 (7th Cir. 2019) (citations omitted); *accord Fleishman*, 698 F.3d at 606 n.3 ("[T]he ADAAA broadened the ADA's protection . . . .").

"[D]etermining whether a plaintiff has a disability is made on an individualized basis." *Fleishman*, 698 F.3d at 607.  A plaintiff "cannot rely on 'the name or diagnosis of the impairment'; rather, he must show 'the effect of that impairment on' him.  *Id.* (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006)).

Hertig summarily alleges that he has a disability under the ADA and Rehabilitation Act, *id.* ¶¶ 36, 51, but the Court does not consider this legal conclusion in its ruling, *McCauley*, 671 F.3d at 616.  Here are the specifics that Hertig alleges: He was diagnosed with Generalized Anxiety Disorder in late 2023. Dkt. 1 ¶ 13.  This condition caused him to pass out at a conference in December 2023 due to "exhaustion and anxiety-related symptoms," *id.*; suffer a brief hospitalization in December 2023, *id.*; take a leave of absence of unspecified duration starting on December 11, 2023, *id.* ¶ 15; "attend[] therapy sessions and regularly tak[e] anti-anxiety medication," *id.* ¶ 14; and step down as "Chair of the Department of Pharmacy Practice" at Butler University, *id.* ¶ 16.

Butler University argues that these allegations fail to articulate substantial impairment of a major life activity. Dkt. 13 at 8–12. In one sense, Butler is right. Hertig alleges discrete, acute medical episodes, a medical treatment regimen, and a change of job title. He does not allege impairment of a specific, major life activity, such as a limited ability to use one's hands, *e.g.*, *Schultz v. Ind. Univ. Health, Inc.*, No. 1:23-cv-01419-JRS-MG, 2025 WL 713547, at *3 (S.D. Ind. Mar. 5, 2025) (denying motion to dismiss for failure to allege impairment of major life activity), or some other function that one performs every day, like "walking, standing, bending, and caring for oneself," *e.g.*, *Jaros*, 684 F.3d at 672.

It requires little imagination, however, to reasonably infer how Hertig's diagnosed Generalized Anxiety Disorder might result in another episode of hospitalization or collapse if he were not regularly taking medication and receiving therapy to treat his "exhaustion and anxiety-related symptoms," as he alleges. Dkt. 1 ¶¶ 13–14. Such an episode would necessarily impair "walking, standing, lifting, bending, speaking, . . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). And the possibility of another episode and attendant impairment on major life activities is essentially what Hertig argues. He characterizes his December 2023 episode as one of "multiple mental-health flareups" and notes the substantial limitations of "loss of consciousness and medically necessary leave . . . when [his] condition is active." Dkt. 19 at 2, 4. As the ADA rules of construction state, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); *accord* dkt. 19 at 4

(citing 42 U.S.C. § 12102(4)(D)).  The ADA should be applied "in favor of broad coverage . . . to the maximum extent permitted."  42 U.S.C. § 12102(4)(A).  That's especially true at the pleading stage.

On this point, Butler University disputes Hertig's characterization of his condition as "episodic," arguing instead that it is only a "one-off" event for which he is receiving ongoing treatment.  Dkt. 20 at 5–6.  Butler University says that "[n]owhere in the Complaint does Dr. Hertig allege that he was at th[e] time [near the end of his Butler employment] substantially limited in any major life activity in the absence of such treatment."  Dkt. 20 at 6.  But the Court may reasonably infer this fact from the complaint's allegations when construing them in Hertig's favor, as it must.  *Lake*, 585 F.3d at 1060.  Hertig could have pled this fact explicitly, but it was not necessary in light of everything else he alleged.  Under Rule 8 plausibility standards, plaintiffs may still rely upon the Court to connect the factual dots so long as all the dots are there.  Butler University's argument ultimately presents a factual dispute that may be addressed on summary judgment or at trial.

Given the Court's obligation to read the complaint in a light most favorable to Hertig, and considering ADA rules of construction adopted by the ADAAA, Hertig has plausibly alleged a legally cognizable "disability" under the ADA and Rehabilitation Act.

### 2.    No Causation

Butler University next argues that the Complaint fails to allege that Hertig's termination was caused by discrimination.  Dkt. 13 at 12–15.  Hertig

argues that he has pled enough to "allow a reasonable inference of disability discrimination under *Twombly* and *Iqbal*." Dkt. 19 at 5. But even construing the complaint in the light most favorable to Hertig, the Court agrees with Butler University. Hertig's story does not hold together.

"[T]o establish causation at the pleading stage, [the plaintiff] must present sufficient facts to raise an inference that [the defendant] discriminated against her 'on the basis of [her] disability.'" *Schultz*, 2025 WL 713547, at *2 (quoting *Roberts*, 817 F.3d at 565). However, the Rehabilitation Act has a "more stringent" causation standard. *Lewis v. Ind. Dep't of Transp.*, --- F.4th ---, No. 25-1776, 2026 WL 1090714, at *4 (7th Cir. Apr. 22, 2026) (quoting *Royan v. Chicago St. Univ.*, 145 F.4th 681, 689 (7th Cir. 2025)). "The ADA requires plaintiffs to show they were discriminated against 'on the basis of' their disability. But under the Rehabilitation Act their discrimination must be 'solely by reason of' their disability," *id.* at *3 (quoting 42 U.S.C. § 12112(a) and 29 U.S.C. § 794(a))—that is, the discrimination is more than "simply a motivating factor," *id.* at *4 (quoting *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 586 (5th Cir. 2021)).

The only fact that connects Hertig's termination with his disability is the allegation that he was pretextually investigated (and later terminated) for improper travel reimbursements *twelve months* after he disclosed his disability and roughly *ten months* after he resigned as chair of the pharmacy practice department. Dkt. 19 at 5; Dkt. 1 ¶ 17. The complaint goes into modest detail about the parties' dispute over the validity of the alleged improper travel

11

reimbursements, as well as the second allegedly pretextual reason for Hertig's dismissal, misleading statements about attending a conference in-person.  Dkt. 1 ¶¶ 18–25.  But on their face, these disputes have nothing to do with Hertig's disability.   And as Butler University points out, Hertig "freely admits to irregularities in his travel reimbursement history."  Dkt. 13 at 13 (citing dkt. 1 ¶¶ 19–20).  Accordingly, Hertig must explain more to plead a "plausible factual narrative that conveys 'a story that holds together.'"  *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014)).

For discrimination claims, "a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered *was connected* to her protected characteristics."  *Id.* (emphasis modified).  The mere fact that Hertig's termination occurred twelve months after the disclosure of his diagnosis and ten months after he stepped down as department chair for health reasons does not plausibly allege that the termination "was connected" to Hertig's disability.  There simply are not enough factual dots for the Court to connect, even at the pleading stage.

Hertig points to his additional alleged "facts" that "'similarly situated' non-disabled faculty did not receive the same treatment."  Dkt. 19 at 5; *see* Dkt. 1 ¶ 32; *cf. Coleman v. Donahoe*, 667 F.3d 835, 841–42 (7th Cir. 2012) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 804 (1973)).  Hertig's cursory invocation of this *McDonnell Douglas* factor does not contain the level of detail required by the plausibility pleading standard, *see Iqbal*, 556 U.S. at 678, to be

credited by this Court as a fact. He identifies no specific individuals who received divergent treatment in similar circumstances and instead offers only a legal conclusion. A court need not consider the legal conclusions presented by a plaintiff when ruling on a motion to dismiss. *McCauley*, 671 F.3d at 616.

Hertig further points to the university's deviation "from tenure procedures by firing him without pre-termination hearing, progressive discipline, or a formal investigation." Dkt. 19 at 6.[2] But these additional facts do not make his causation story more plausible because of additional intervening events that Hertig omits from his argument. Hertig alleges that Butler University granted Hertig tenure in June 2024 and executed his employment agreement in October 2024. These intervening events render causation even more implausible because Butler University knew about Hertig's disability when it took actions that advanced Hertig's career rather than hindered it. These intervening actions are fundamentally inconsistent with the story that Butler terminated Hertig "because of" his disability. When coupled with the tenuous twelve-month proximity between protected activity and adverse action, these intervening events remove any "plausible inference that the adverse action suffered *was connected*" to his disability, notwithstanding the procedural irregularities Hertig describes in his response brief. *Kaminski*, 23 F.4th at 777 (emphasis modified).

---

[2] Hertig alleged these facts only in support of his breach of contract claim, not his federal claims. Dkt. 1 ¶ 59. Even so, the Court considers them in support of his federal claims, reading the complaint as a whole and construing it in Hertig's favor.

13

In sum, Hertig has not plausibly alleged an ADA claim because he has failed to allege that his disability was the but-for cause of the adverse employment action. For the same reason, he also has failed to allege a Rehabilitation Act claim, which is subject to an even "more stringent" causation standard. *Lewis*, --- F.4th ---, 2026 WL 1090714, at *3. The ADA and Rehabilitation Act claims are **dismissed.**

## B.    No Retaliation

The Court's analysis regarding Hertig's implausible timeline of events applies with equal force to his retaliation claim. To bring an ADA retaliation claim, "a plaintiff must allege: 1) that he engaged in a statutorily protected activity; 2) that he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action." *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (citing *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997)).

Hertig alleges that Butler University terminated him in retaliation for engaging in protected activity, that is, disclosing his diagnosis of Generalized Anxiety Disorder, receiving treatment, and stepping down as chair of the department. Dkt. 1 ¶¶ 14–16, 44; dkt. 19 at 6. But even with plausible allegations of protected activity, Butler University argues, "[r]etaliation claims may still be dismissed if a sufficiently 'lengthy time period between the protected activity and the alleged retaliation makes any causal connection between the two impossible.'" Dkt. 13 at 17 (quoting *Harris v. Martinez*, No. 22-cv-00373, 2023 WL 3504930, at *7 (N.D. Ill. May 17, 2023)); *see also Carlson,* 758 F.3d at 828

(addressing Title VII claim and stating "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible").[3]

As noted above, Butler University terminated Hertig *twelve months* after he disclosed his diagnosis and *ten months* after he stepped down as chair. And the termination occurred after multiple intervening circumstances that fundamentally undermine a claim of retaliatory intent. Moreover, there is no allegation of an ongoing pattern of retaliation. *E.g., Carlson,* 758 F.3d at 829 (denying motion to dismiss despite implausibly lengthy temporal proximity between protected activity and adverse event because of an alleged "ongoing pattern of retaliation"). This timeline and these intervening events do not allege a plausible story of ADA retaliation.[4] The ADA retaliation claim is **dismissed.**

## C.    **No Supplemental Jurisdiction**

Without any federal claims, the Court in its discretion declines to exercise supplemental jurisdiction over the remaining state-law breach of contract claim.

---

[3] Because the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), uses comparable language to that of Title VII, 42 U.S.C § 2000e–3(a), Title VII retaliation cases provide guidance for the assessment of ADA retaliation claims. *Prince,* 73 F. Supp. 3d at 894 (citing *Casna v. City of Loves Park,* 574 F.3d 420, 427 (7th Cir. 2009); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir. 1998)).

[4] *E.g., Wheeler v. Piazza,* No. 16-cv-3861, 2018 WL 835353, at *14 (N.D. Ill. Feb. 13, 2018) (finding that "[t]he nine-month gap between the [protected] speech and the alleged retaliation is too large under Seventh Circuit precedent to sufficiently state, without more, a retaliation claim, even at the motion to dismiss stage"); *Ghiles v. City of Chi. Heights,* No. 12 CV 07634, 2016 WL 561897, at *4–6 (N.D. Ill. Feb. 12, 2016) (finding that a "six-month delay is too remote" to survive a motion to dismiss retaliation claim); *see also Prince,* 73 F. Supp. 3d at 894 (N.D. Ill. Aug. 2, 2010) (dismissing retaliation claims supported by suspicious timing alone).

*See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). "It is the well-established law of [the Seventh] [C]ircuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Therefore, the state law claim is subject to **dismissal without prejudice.**

### IV. CONCLUSION

Butler University's motion to dismiss is **GRANTED,** dkt. [12], and Counts I, II, and III of Hertig's complaint are **DISMISSED without prejudice** at this time. Ordinarily, a plaintiff whose complaint is dismissed "should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). As Hertig has not yet amended his complaint, he shall have an opportunity to do so. Fed. R. Civ. P. 15(a)(2). And the parties agreed that an opportunity to amend is the best course of action at this point. Dkt. 19 at 8–9; Dkt. 20 at 12. Accordingly, Hertig has until **May 30, 2026,** to file an amended complaint asserting a valid claim over which the Court has original jurisdiction. If no amended complaint is filed by that date, the dismissal of Counts I, II, and III will automatically convert to one with prejudice. The Court also declines to exercise supplemental jurisdiction over Hertig's remaining state law claim in Count IV. If no amended complaint asserting a claim over which

the Court has original jurisdiction is filed by **May 30, 2026,** Count IV will automatically be dismissed without prejudice for refiling in state court.

**SO ORDERED.**

Date:  4/30/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Timothy A. Dowers
JOHN H. HASKIN & ASSOCIATES, LLC
tdowers@jhaskinlaw.com

Matthew Michael Humble
Stuart & Branigin LLP
mmh@stuartlaw.com

William P. Kealey
Stuart & Branigin LLP
wpk@stuartlaw.com