UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN HERTIG,<br><br>Plaintiff,<br><br>v.<br><br>BUTLER UNIVERSITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:25-cv-01511-JRO-MKK |

## ORDER GRANTING MOTION TO DISMISS

Defendant Butler University moves to dismiss Plaintiff Dr. John Hertig's first amended complaint ("FAC") on the ground that it fails to plausibly allege that Dr. Hertig's termination was caused by disability discrimination or in retaliation for reporting his disability. Dkt. [38]. The Court **GRANTS** Butler University's motion.

## I. FACTUAL BACKGROUND

At the motion to dismiss stage, the Court "accept[s] the well-pleaded facts in the complaint as true," but does not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Butler University is a private university in Indianapolis, Indiana. Dkt. 37 ¶ 3. Dr. Hertig was hired as a full-time Associate Professor of Pharmacy Practice by Butler University on October 1, 2018. *Id.* ¶ 10. He also served as both Vice-Chair and Chair of the Department of Pharmacy Practice. *Id.* ¶ 11. Dr. Hertig

has Generalized Anxiety Disorder, a mental health condition for which he was receiving treatment during his employment with Butler University. *Id.* ¶ 12.

In the fall of 2023, Dr. Hertig's anxiety substantially worsened, in part because of stress from his Department Chair responsibilities. *Id.* ¶ 13.

Sometime before December 2023, Dr. Hertig submitted materials seeking tenure and promotion from Associate Professor to Full Professor. *Id.* ¶¶ 21–22. Dr. Hertig alleges that a substantial portion of the tenure and promotion process, including a review of his materials at the Department- and College-level, occurred before December 2023. *Id.* ¶ 23.

On December 3–4, 2023, Dr. Hertig experienced a medical event while attending a professional conference in California. *Id.* ¶ 14. The medical event required him to be transported by ambulance to the emergency room, and he was not discharged from the hospital until approximately twelve hours later. *Id.* On December 8, Dr. Hertig began psychiatric treatment and was diagnosed with Generalized Anxiety Disorder. *Id.* ¶ 15. At that time, Dr. Hertig was also prescribed medication to help him with his anxiety and depression. *Id.*

On December 11, 2023, Dr. Hertig took leave for the remainder of 2023 due to his mental health. *Id.* ¶ 16. In February of 2024, Dr. Hertig stepped down from his role as Chair of the Department of Pharmacy Practice. *Id.* ¶ 17.

On October 1, 2024, Robert Soltis, dean of the College of Pharmacy and Health Sciences, dkt. 37-1 at 2, signed a Faculty Appointment Agreement that named Dr. Hertig as a tenured Associate Professor. Dkt. 37 ¶ 24. This meant that Dr. Hertig had been approved for tenure but had not received the requested

promotion to Full Professor. *Id.* ¶ 22. Dr. Hertig signed the Faculty Appointment Agreement on October 10, 2024. *Id.* ¶ 24.

Dr. Hertig alleges that several members of the University's leadership knew of his hospitalization, leave, mental health decline, and decision to step down from his Chair position. *Id.* ¶ 19. He also alleges that Soltis and Jane Gervasio, his Department Chair, also knew of all this. *Id.* ¶¶ 19, 40. Soltis ultimately participated in the process that led to Dr. Hertig's termination. *Id.* ¶¶ 19–20.

On December 18, 2024, Dr. Hertig was contacted by an Butler University Accounts Payable Assistant, who informed him that during the University's transition to a new employee financial system, issues had been discovered regarding his flight-reimbursements from previous work-related travel. *Id.* ¶¶ 25–26. At Butler University's request, Dr. Hertig provided documentation about flights he had taken, eCredits, and other flight records. *Id.* ¶¶ 27–29.

Dr. Hertig details and admits to three primary reimbursement discrepancies. First, Dr. Hertig once submitted a duplicate reimbursement request; upon realizing the error, he repaid Butler University. *Id.* ¶ 31. Second, Dr. Hertig once purchased a flight and submitted the reimbursement request but later decided to cancel the original flight and rebook using frequent flyer miles. *Id.* ¶ 32. He claims he promptly reimbursed Butler University for the cost of the original ticket in this second situation. *Id.* Third, Dr. Hertig recounts an incident where he was supposed to give a presentation at a conference in Washington, D.C., but instead delivered it virtually from Kansas City. *Id.* ¶ 40. Dr. Hertig says this presentation arose during the Fall of 2023, when his mental

health was declining. *Id.* ¶ 30. Dr. Hertig claims he never submitted a reimbursement request for his flight to Kansas City, and he completed the presentation virtually. *Id.* ¶ 42.

On February 17, 2025, Butler University terminated Dr. Hertig, citing the travel-reimbursement discrepancies and claiming that Dr. Hertig received reimbursements for cancelled flights on his personal credit card. *Id.* ¶ 39. After his termination, Butler University determined that Dr. Hertig had been overpaid $3,223.40 for two flights and Butler University decided to withhold $2,289.11 in otherwise approved reimbursements. *Id.* ¶ 44.

## II. PROCEDURAL BACKGROUND

Dr. Hertig brought this suit in federal court on July 29, 2025, alleging employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–213, and Section 504 of the Rehabilitation Act, retaliation under the ADA, 42 U.S.C. § 12203(a), and a breach of contract claim related to the October 10, 2024, Faculty Appointment Agreement. Dkt. 1. On April 30, 2026, this Court granted Butler University's first motion to dismiss, holding that Dr. Hertig failed to plausibly plead that his disability was the cause of his discharge and declining to exercise supplemental jurisdiction over the remaining breach of contract claim. *See generally* dkt. 33. The Court gave Dr. Hertig leave to amend his complaint. *Id.* at 16. Dr. Hertig filed his FAC on June 1, 2026, which realleges only the ADA claims and his breach of contract claim. Dkt. 37.

Butler University now moves to dismiss the FAC for failure to state a claim, arguing that Dr. Hertig yet again fails to plausibly connect his termination with

his disability. Dkt. 38. The Court heard oral argument on that motion and took the matter under advisement. Dkt. 48. It is now ripe for consideration.

## III. LEGAL STANDARD

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff may defeat a motion to dismiss filed pursuant to Rule 12(b)(6) if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary-judgment stage," *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. In deciding a motion to dismiss under Rule 12(b)(6), the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616.

## IV. DISCUSSION

### A. Discrimination Claims

In relevant part, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). "To prove a violation of § 12112(a), a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016).

"[T]o establish causation at [the pleading] stage, plaintiffs must plead sufficient facts supporting an inference that the [defendant] discriminated against [him] 'on the basis of [his] disability.'" *Id.* "It is essential for the plaintiff to link the adverse action with his disability." *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020).

Butler University does not dispute that Dr. Hertig was disabled or that he was otherwise qualified to perform his job. Butler University instead argues that Dr. Hertig's amended complaint does not cure his failure to plausibly allege causation.

In one sense, Dr. Hertig has done just that. In its prior order, the Court explained that several intervening events between the onset of Dr. Hertig's disability and Butler University's termination decision foreclosed any plausible inference that the termination was caused by disability discrimination. Dkt. 33 at 13. Indeed, both his original and amended complaint allege that Butler

University promoted him and executed an employment agreement in his favor despite Butler University's awareness of his disability. But now the FAC "correct[s] the chronology," dkt. 43 at 2, and adds plausible ambiguity to the significance of Butler University's promotion decisions, alleging that these decisions were made before his disability became widely known to Butler University's leadership. Dkt. 37 ¶ 23. That allegation is enough to eliminate the principal basis for the Court's prior dismissal order.

However, the allegations in the FAC now establish that Butler University terminated Dr. Hertig because he in fact violated the reimbursement policy, not *only* as a pretext for discrimination. Dr. Hertig admitted "repa[ying] known reimbursement *mistakes*," *see* dkt. 43 at 2, 5, 6 (emphasis added); *see also* dkt. 37 ¶¶ 31, 32, 45, 55, and conceded in briefing and oral argument that reimbursement mistakes were a but-for cause of his termination, dkt. 43 at 5–6. The ADA permits employers to discipline disabled employees for violations of rules that apply to all employees, even if the violation of the rule is caused by a disability. *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001). As Butler University argues in its briefing and at oral argument, that is what the FAC alleges happened here.

Dr. Hertig argues that there can be multiple but-for causes for his termination, and that Butler University's "reimbursement concern does not foreclose a reasonable inference that disability also caused Defendant's decision to terminate him." Dkt. 43 at 6. Even assuming this is true—as the Court must at this stage of the proceedings—the Court does not need to wait until summary

judgment to dismiss his federal claims because Dr. Hertig has already expressly alleged and conceded that he committed the conduct which his employer proffered as its reason for terminating him. *Pernice*, 237 F.3d at 786 ("[a]lthough the reasons for an employer's decision to take an adverse job action against an employee are often questions of fact, courts have resolved cases like this one at the pleading stage"); *see cf. Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 824–25 (7th Cir. 2006) (defendant was entitled to summary judgment because the plaintiff admitted to the conduct which the employer proffered as its reason for terminating the plaintiff). Based on this allegation alone, any argument that Dr. Hertig makes to the contrary is immaterial.

This is so even if, as Dr. Hertig alleges, some of the reimbursement mistakes cited in his termination took place during a time when his mental health was in decline. *See* dkt. 37 ¶¶ 30, 39. Seventh Circuit precedent is clear that "[v]iolation of a workplace rule, even if it is caused by a disability, is no defense to discipline up to and including termination." *Budde v. Kane Cnty. Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (citing *Pernice*, 237 F.3d at 785); *Pernice*, 237 F.3d at 785 ("It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability." (citing cases)); *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 574 (7th Cir. 2016) ("[A]n employer may, consistent with the ADA and the Rehabilitation Act, terminate an employee for inappropriate behavior even when that behavior is precipitated by the employee's disability . . . .") (citing *Palmer v. Circuit Ct. of Cook Cnty.*, 117

F.3d 351 (7th Cir. 1997)). Here, Dr. Hertig does not even allege that his disability caused his reimbursement discrepancies, only that the discrepancies allegedly occurred while he was disabled. Accordingly, under Seventh Circuit ADA precedent, Dr. Hertig's reimbursement errors were a legitimate basis for Butler University to terminate him, even if his disability was related to or caused the events that led to the errors.

In sum, Dr. Hertig has not plausibly pleaded his disability caused his termination, and his claim for discrimination fails.

**B. Retaliation Claim**

To bring an ADA retaliation claim, "a plaintiff must allege: 1) that he engaged in a statutorily protected activity; 2) that he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action." *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (citing *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997)).

Dr. Hertig's retaliation claim fails for the same reason as his discrimination claim. Conceding that his reimbursement mistakes were a but-for cause of his termination, dkt. 43 at 5–6, makes it impossible to allege any plausible connection between the alleged retaliation and his disability. Once again, even if the reasons for the reimbursement discrepancies were caused by his disability, that is still not sufficient. *E.g.*, *Pernice*, 237 F.3d at 785; *Felix*, 828 F.3d at 574; *Budde*, 597 F.3d at 862. He fails to plausibly allege a causal link between disclosing his disability and his termination.

### C. State Law Claim

Finally, Dr. Hertig argues that his state law breach of contract claims should remain. But this assumes that his federal claims are plausibly stated. Although district courts have discretion to determine whether to retain jurisdiction over state law claims, the general presumption in the Seventh Circuit is that a court should dismiss without prejudice supplemental state law claims when all the federal claims have been dismissed. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Since the Court dismisses Dr. Hertig's federal claims, the Court declines to exercise jurisdiction over his state law claims. Accordingly, those claims are dismissed without prejudice.

## V. CONCLUSION

Butler University's motion to dismiss is **GRANTED**, dkt. [38]. Counts I and II of Dr. Hertig's complaint are **DISMISSED with prejudice**. Count III of Dr. Hertig's complaint is **DISMISSED without prejudice**. The parties' joint motion to reopen discovery, dkt. [51], is **DENIED as moot**.

Final judgment shall now enter by separate entry.

**SO ORDERED.**

Date: 11/4/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record